(5 App. Div. 565.)

### FORDHAM v. GOUVERNEUR VILLAGE.

(Supreme Court, Appellate Division, Third Department. May 21, 1896.)

MARRIAGE—PROOF OF.

    A married woman, four years after her husband had disappeared, and after his relatives had informed her that he was dead, married plaintiff, by a ceremony duly performed, and they lived together as husband and wife until her death, eleven years afterwards. Her first husband was never heard of after he disappeared. *Held*, that the evidence was sufficient to show a marriage between the parties after the five years specified in Rev. St. (8th Ed.) p. 2596, § 6, which provides that if any person, whose husband or wife shall have been absent from the state five years without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority.

Appeal from trial term, St. Lawrence county.

Action by Charles F. Fordham against Gouverneur village to recover for injuries to plaintiff's wife, caused by the alleged defective condition of a sidewalk. The complaint was dismissed, and plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

C. A. Kellogg, for appellant.
William Neary, for respondent.

HERRICK, J. This is an appeal from a judgment entered upon an order directing a dismissal of the complaint. The plaintiff, in

his complaint, alleges that a certain street and bridge of the defendant was out of repair and dangerous to travel upon, owing to the negligence of the defendant; that Adella N. Fordham was his wife, and that, while proceeding along the street of the defendant, and crossing a bridge in said street, she was, by reason of its dangerous condition, thrown to the ground, by which she received injuries, on account of which the plaintiff was put to great expense, and was for a long time deprived of the society, comfort, aid, and services of said wife; and that she finally died as the result of her injuries.

Upon the case coming to trial, the plaintiff's counsel, in opening the case to the jury, made, in substance, the following statement: That the plaintiff married his wife, Adella Fordham, some 11 or 12 years ago. That, prior to her marriage with plaintiff, she had been married to one Grant, with whom she resided for a time in the village of Hermon. She had a child by Grant, who is still living. Grant was a man of dissipated habits. After living together some time at Hermon, they removed to Holyoke, Mass., where they resided together as husband and wife. A brother of Adella boarded with them there. Adella returned to Hermon on a visit, that being the place where her parents resided. After staying at Hermon a short time, she returned to Holyoke, where she found that Grant had left, why or for what reason was unknown. After waiting some time for Grant to return, her money being exhausted, she sold the furniture and returned to her parents at Hermon. After the lapse of some two years, she brought an action in the supreme court for a divorce, but she was unable to obtain service upon Grant or find out where he was. She hunted up Grant's relatives, making one or more visits to Canada, where his relatives resided, and was there informed by Grant's relatives that he was dead, there being a report that he died of malarial fever. The action for a divorce was then dropped. Four years after Grant's disappearance, she and the plaintiff were married by a ceremony performed by a minister in a church in Hermon. From that time until she died she lived with the plaintiff as his wife in the village of Hermon, and in Gouverneur village, where she was known as Mrs. Fordham, received her mail as Mrs. Fordham, attended to his house, did the work and performed the duties of a wife, and died and was buried in the village of Hermon as the wife of the plaintiff. Grant has never been heard from since he disappeared, except the report that he was dead. It was stated that Grant was very much attached to his child, but he has never communicated with any one having charge of the child, or with the child itself.

At the close of the opening of the case, the defendant's counsel moved for a nonsuit upon the ground:

"That no right of action in the plaintiff to recover is shown, the contention of the defendant being that it is admitted that Adella Fordham married the plaintiff in this action within four years from the time she last heard from her husband, Grant, and knew that he was living, and that, according to the statute, that marriage was void, as there was no sufficient evidence of his death."

During the proceedings that followed, plaintiff's counsel made the following statement in regard to the return of the plaintiff's alleged wife to Holyoke, Mass.:

"I call the attention of the court to the fact that I stated I would prove what she did there." Court: "State it, please." Counsel: "Her brother was there. She inquired of him where the man had gone. She went to the same home and lived there." Court: "How long?" Counsel: "I do not know; some little time, until she finally had to sell her furniture and go home for want of means. He left her without any provision." Again, by counsel: "I want it to appear that we propose to prove that Grant was reputed to be dead in the family of Adella Fordham in Hermon. We propose to show that she was informed by his relatives, before her marriage to Fordham, that he was dead." Again: "One fact I did not state is that mail sent to him was returned. I say that mail was sent to Holyoke, to Meriden, Conn., and to Orange county, and was returned."

The motion for a nonsuit and for a dismissal of the complaint was granted. This, I think, was error. It seems to me that the matters stated by the counsel in his opening presented a question of fact to be passed upon by the jury. At the time of the plaintiff's marriage to Adella Fordham, she had not heard from her husband for four years, and she was informed by her husband's relatives that he was reported to be dead. Assuming, but not deciding, that, however innocent in morals the parties may have been at the time of contracting the marriage, it was illegal, under section 298 of the Penal Code, that does not dispose of the question. It is a general rule at the common law that a "person shown not to have been heard of for seven years by those, if any, who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death." 1 Am. & Eng. Enc. Law, 38. While it is presumed, after the lapse of seven years, that the person is dead, yet there is no presumption as to when, during the seven years, his death occurred. Our statute provides that:

"If any person, whose husband or wife shall have absented himself or herself for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." Birdseye's St. p. 1401, § 6.

Under our statutes, then, the marriage between the plaintiff and Adella Fordham would have been legal if contracted five years after the disappearance of Grant, without being known to her to have been living during that time. It appears, from the opening of counsel, that the parties had been living together openly and notoriously, for 11 or 12 years, commencing 4 years after Grant's disappearance. She died as his wife, and was buried as his wife. Conceding that the commencement of their relations was illegal, and did not in law render them husband and wife, because, at that time, there was no sufficient evidence of the death of her husband, and sufficient time had not elapsed to raise the presumption of his death, and without discussing the conflicting presumptions.

of innocence on her part, and of the continuance of life on his part, it seems to me that the time that has elapsed since the law raises the presumption of Grant's death, during which they lived and cohabited together as husband and wife, and held themselves out to the public as such, would permit the jury to find a marriage between them subsequent to the time when the law would have presumed Grant to be dead.

I think it is unnecessary to review the various cases which have caused me to arrive at this conclusion. In the case of Hynes v. McDermott, 91 N. Y. 451, a number of cases are reviewed and approved by the court, where the parties had assumed the marital relation where one of them had, at the time, a husband living, and where it was held that their continuing to live and cohabit together as husband and wife, after the death of the first husband, warranted the jury in inferring a marriage between them, after the removal of such obstacle.

In Gall v. Gall, 114 N. Y. 109, 21 N. E. 106, the court said:

"The cohabitation, apparently decent and orderly, of two persons opposite in sex, raises a presumption, of more or less strength, that they have been duly married. While such cohabitation does not constitute marriage, it tends to prove that a marriage contract has been entered into by the parties. Where, however, the cohabitation is illicit in its origin, the presumption is that it so continues until a change in its character is shown by acts and circumstances strongly indicating that the connection has become matrimonial. It is sufficient if the acts and declarations of the parties, their reputation as married people, and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife. A present agreement between competent parties to take each other for husband and wife constitutes a valid marriage, even if not in the presence of witnesses. Such marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among neighbors and relations, and the like. And where the intercourse was illicit at first, but was not accompanied by any of the evidences of marriage, and subsequently it assumes a matrimonial character, and is surrounded by the evidences of a valid marriage above named, a question of fact arises, for the determination of the jury. They are to weigh the presumption arising from the meretricious character of the connection in its origin, with the presumption arising from the subsequent acknowledgment, declarations, repute, etc., and decide whether all of the circumstances, taken together, are sufficient evidence of marriage."

Marriage is largely a question of intent, and while intention alone is not sufficient to establish the relation, yet where there is intent, combined with an actual living together as husband and wife, and holding each other out to the world as such, it is sufficient to constitute a valid marriage in the absence of any legal bar. The origin of the relation between the plaintiff and his alleged wife in this case was not what is commonly called meretricious. They did not come together for the mere purpose of sexual intercourse, with no intention of incurring or assuming any of the obligations or responsibilities of the marital relation. They were united by an open, public ceremony of marriage, followed up by openly living together, for years, professedly as husband and wife. And, there being a presumption of law, after the lapse of seven years, that Grant was dead, I think, within the cases

that I have referred to, and those cited therein, that a jury would have a right to find a marriage between the parties, after the lapse of the period sufficient to raise the presumption of Grant's death, and that, therefore, the judgment should be reversed, and a new trial granted, with costs to abide the event.

PARKER, P. J., and PUTNAM and MERWIN, JJ., concur. LANDON, J., not voting.